Mercure, J. P., Crew III, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.

■ JOSEPH CALABRO, Doing Business as MA's SERVICE STATION, Respondent, v SUN OIL COMPANY, Defendant, and KING SERVICE, INC., Appellant. [714 NYS2d 781] —Carpinello, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered August 16, 1999 in Albany County, upon a verdict rendered in favor of plaintiff.

In 1969, plaintiff began operating a Sunoco gas station on the corner of Routes 20 and 158 in Albany County pursuant to a dealer agreement with defendant Sun Oil Company, a Sunoco distributor in the area. Under the agreement, plaintiff agreed to purchase Sunoco gasoline and other motor fuels and to lease, among other fixtures, four pumps and three underground tanks. Sun Oil installed the tanks, pumps and related piping and was responsible for maintaining and repairing this equipment. In 1978, plaintiff purchased the tanks for a nominal sum and in 1981 a new dealer agreement was entered into whereby plaintiff continued to lease the pumps and Sun Oil continued to be responsible for maintaining and repairing them. The 1981 dealer agreement was assigned to defendant King Service, Inc. (hereinafter defendant) in 1983.

The record reveals that plaintiff encountered problems with the pumps over the years, including claims that they discharged gas on the ground. When these problems occurred, plaintiff would contact Sun Oil's maintenance department or, subsequent to 1983, King's maintenance department to remedy the situation. Neither party, according to plaintiff, ever sufficiently remedied the problems, which persisted for the entire period the leased equipment was on his property. In the course of a 1992 tank replacement project undertaken by plaintiff, petroleum-contaminated soil was detected on the property by the contractor hired to do the work. The Department of Environmental Conservation (hereinafter DEC) was immediately notified and remediation talks ensued. Although plaintiff had various options available to him, he opted, with DEC approval, to transport all of the contaminated soil to a piece of property he owned across the street and to cure it himself. This time consuming and labor intensive option— which required plaintiff to spread fertilizer on the contaminated soil and turn it over frequently—took nearly seven years

and precluded him from renting the parcel for commercial purposes. There was testimony at trial that the remediation option used by plaintiff was reasonable and quite effective as plaintiff's efforts resulted in a steady decline of contamination in the soil.

Plaintiff commenced this action against Sun Oil and defendant to recover for the clean-up costs incurred and other related damages. Although the complaint asserted causes of action under the Navigation Law, the case proceeded to trial on a negligence claim only. The jury returned a verdict finding that Sun Oil, defendant and plaintiff were each negligent and apportioned liability 40% each to Sun Oil and defendant and 20% to plaintiff. The jury awarded nearly $59,000 for costs associated with the remediation and $123,000 for the loss of rental value to plaintiff's adjacent property. Defendant only appeals.

As a starting point, we reject defendant's claim that plaintiff is precluded from recovering against any third party, including itself, because he is a discharger within the meaning of Navigation Law § 181 (1). Although plaintiff's status as a person responsible for the discharge precluded him from bringing a cause of action in strict liability under Navigation Law § 181 (5) (*see*, Navigation Law § 172 [3]; *White v Long*, 85 NY2d 564, 568-569), he is not precluded from bringing a cause of action in negligence, which exists as a separate, substantive cause of action independent of the Navigation Law (*see*, Navigation Law § 193; *see also*, *White v Long*, 229 AD2d 178; *Wever Petroleum v Gord's Ltd.*, 225 AD2d 27, 31). As to defendant's claim that the verdict is unsupported by the evidence, we are unpersuaded.

The jury heard conflicting evidence concerning what caused the contamination. Plaintiff, on the one hand, presented evidence that the contamination was caused by the leaking pumps and related piping, which were installed by Sun Oil and maintained and repaired by Sun Oil and defendant. To this end, plaintiff also submitted evidence that when the pumps and/or piping leaked, he contacted either Sun Oil or defendant to fix the problem, to no avail. Sun Oil and defendant, on the other hand, placed the blame for the contamination squarely on plaintiff's shoulders and argued that he failed in his burden of proving that any conduct on their part caused or contributed to the condition of the soil. They stressed to the jury that plaintiff knew about the alleged leaky conditions of the pumps for 30 years yet continued to use them even though, according to him, they had never been properly fixed.

Sun Oil and defendant also submitted evidence that the

source of the contamination was from the tanks themselves. This evidence included a DEC report stating that the underground storage tanks caused the spill. On cross-examination of the DEC program specialist who authored this report, however, it was revealed that the initial DEC response form noted that the contamination could have derived from the tanks *or* piping, that the program specialist did not investigate whether a leaking dispenser caused the contamination and notations in his file reveal that the only tank actually inspected by him was in "excellent" condition. Plaintiff's environmental consultant, who inspected each of the removed tanks, testified that he did not observe any indications of extensive corrosion, breaches, holes or perforations in the tanks themselves. Pictures of the tanks were admitted into evidence and viewed by the jury. Upon hearing this conflicting evidence, the jury determined that each party was negligent. We are unable to conclude that the evidence so preponderated in favor of defendant that this verdict could not have been reached on any fair interpretation of the evidence (*see, Lolik v Big V Supermarkets*, 86 NY2d 744, 746).

Nor do we discern any basis upon which to disturb the damage award. Plaintiff submitted sufficient evidence regarding the expenses he incurred to remediate the soil. These expenses included additional costs paid to the subcontractor hired to replace the tanks, costs associated with the purchase of heavy equipment to transport and turn the soil, wages to those employees who assisted him in this process and the cost of necessary supplies, such as fertilizer. Similarly, the loss of rental income on his adjacent property was more than adequately established. It was uncontradicted that plaintiff had purchased this property in order to lease it out as a general store, that several people expressed an interest in so renting it over the years and that it could command a rental rate of between $1,400 and $1,500 per month. Thus, we reject defendant's contention that the damage award bore no reasonable relationship to the credible evidence presented at trial.

Defendant further claims that erroneous evidentiary rulings by Supreme Court warrant a new trial. We disagree. For example, defendant takes issue with the court's decision to redact language in the 1969 dealer agreement pertaining to Sun Oil's right to contractual indemnification from plaintiff. We need not tarry over the propriety of Supreme Court's decision in this regard since *Sun Oil* has not appealed from the judgment against it. The legal rights of defendant, which was not a party to that agreement and which in any event failed to

raise contractual indemnification as an affirmative defense in its answer, were not affected by the court's ruling (*see generally*, *People v Lloyd*, 201 AD2d 945, *lv denied* 83 NY2d 873; *527-9 Lenox Ave. Realty Corp. v Ninth St. Assocs.*, 200 AD2d 531; *Da Costa's Automotive v Birchwood Plaza Shell*, 106 AD2d 484, 486).

Defendant next contends that the court abused its discretion in precluding certain laboratory tests results from being admitted into evidence during the direct examination of an environmental geologist who performed tests on the contaminated soil and reviewed the laboratory data in the course of his investigation in this case. Admission of the document was objected to on hearsay grounds, which was sustained by Supreme Court. Defendant's claim that Supreme Court's ruling warrants a new trial is unpersuasive for two reasons. First, the subject soil analysis results had already been admitted into evidence and therefore counsel could have attempted to elicit testimony from this witness based on the previously-admitted documents. More importantly, the subject witness had been precluded from giving expert opinion testimony in this case because he was not properly noticed as an expert under CPLR 3101 (d) (1)—a ruling with which defendant does *not* take issue on appeal—and thus he could not have offered an expert opinion on the laboratory results or possible sources of contamination on the site in any event.

Defendant's remaining contentions have been reviewed and rejected as meritless.

Cardona, P. J., Graffeo, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.