■ In the Matter of 310 SOUTH BROADWAY CORPORATION et al., Appellants, v H. CARL McCALL, as Comptroller of the State of New York, et al., Respondents. [712 NYS2d 206] —Spain, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered June 3, 1999 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Executive Director of the New York Environmental Protection and Spill Compensation Fund denying petitioners' applications for reimbursement.

Petitioners own two parcels of real property in the City of Yonkers, Westchester County, at which their tenant operated gas stations. When the tenant failed to comply with the terms of a consent order it had entered into with the Department of Environmental Conservation for remediation of petroleum discharges at the sites, petitioners applied for compensation from the New York Environmental Protection and Spill Compensation Fund (hereinafter the Fund) based upon damage to their real property and loss of income. The Fund denied the applications, concluding that as owners of the real property on which the discharges occurred and as owners of the tank systems from which the discharges occurred, petitioners were strictly liable for the petroleum contamination and, therefore, were not eligible for compensation. Petitioners thereafter commenced this CPLR article 78 proceeding to review the determination which denied their applications. Concluding that the determination was not arbitrary and capricious, Supreme Court dismissed the petition, prompting this appeal by petitioners.

"This court has consistently construed Navigation Law § 181 (1) so as to impose liability on the owner of a system from which a discharge occurred in the absence of evidence that the owner caused or contributed to the discharge" (*Matter of White v Regan*, 171 AD2d 197, 199-200, *lv denied* 79 NY2d 754 [citations omitted]). In most cases, the property owner and system owner are one and the same (*see, e.g., State of New York v Arthur L. Moon, Inc.*, 228 AD2d 826, *appeal dismissed* 89 NY2d 861; *State of New York v Tartan Oil Corp.*, 219 AD2d 111), but

where there is no such unity of ownership, liability without regard to fault is properly imposed on the system owner and not on the faultless property owner (*see, State of New York v Green*, 271 AD2d 11; *see also, State of New York v Speonk Fuel*, 273 AD2d 681). Thus, in the absence of any claim that petitioners actually caused or contributed to the happening of the discharges, they are strictly liable as dischargers under Navigation Law article 12 only if they owned the systems from which the discharges occurred.

As properly recognized by Supreme Court, the scope of judicial review of the administrative determinations challenged by petitioners does not permit the court to determine whether in fact petitioners own the systems from which the discharges occurred. "[I]t is settled that in a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the [determination] or whether it is arbitrary and capricious" (*Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363). Accordingly, the only issue to be resolved in this proceeding is whether the record provides a rational basis for the determinations that petitioners owned the tank systems from which discharges occurred or whether those determinations are arbitrary and capricious.

While there is evidence in the record that underground tanks were originally installed and owned by entities other than the owners of the property, it is undisputed that those tanks remained in the ground when those entities ceased their involvement in the operation of the gas stations. Petitioners contend that ownership of the tanks ultimately passed to their tenant, but the record contains tank registration forms executed by petitioners which indicate that petitioners own the tanks. Petitioners contend that their tenant misled them into signing the forms and they rely on a letter in which they disavowed any ownership of the tanks. However, the letter was written after the discovery of petroleum discharges on the properties. In addition, the leases provided that "all * * * improvements, equipment and appurtenances on or in the demised premises at the commencement of the term, and which may be erected, installed or affixed on or in the demised premises during the term, are * * * deemed to be and immediately become part of the realty and the sole and absolute property of the Landlord".

Although petitioners contend that there is an exception for trade fixtures installed by the tenant, which are to remain the

property of the tenant, the exception in the lease provisions specifically refers to "*movable* trade fixtures" (emphasis supplied). Having been imbedded into the land, the tanks became affixed to and improved the realty and they were "not removable without injury to the realty and virtual destruction of said fixtures" (*Sunnybrook Realty Co. v State of New York*, 15 Misc 2d 739, 741, *mod on other grounds* 11 AD2d 888, *affd* 9 NY2d 960). Accordingly, there is nothing irrational in respondents' failure to treat the tanks as movable trade fixtures within the meaning of the relevant lease provisions. The record provides a rational basis for the determination that petitioners owned the tanks from which the discharges occurred and, therefore, the judgment dismissing their petition is affirmed.

Cardona, P. J., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.