■ STATE OF NEW YORK, Appellant, v C.J. BURTH SERVICES, INC., et al., Respondents. [915 NYS2d 174]—

Garry, J. Appeal from an order of the Supreme Court (Lynch, J.), entered February 24, 2009 in Albany County, which, among other things, denied plaintiff's motion for partial summary judgment.

Defendants Carlton J. Burth and James G. Stasaitis, Jr. (hereinafter collectively referred to as defendants) own real property in the City of Utica, Oneida County, where they operate their automobile repair business, defendant C.J. Burth Services, Inc. (hereinafter the corporation). When defendants purchased the property in 1987, it was being used as an automobile repair business; there were no gas tanks, pumps, or other indications on the property that petroleum had been stored there, and defendants did not know that the property had ever been used for that purpose. In 1992, defendants learned that the property had once been used as a service station and that several underground petroleum storage tanks that had been taken out of service years before were still located on the property. The tanks were removed in the presence of a representative of the Department of Environmental Conservation (hereinafter DEC) and proved to be corroded and riddled with holes. DEC demanded that defendants and the corporation assume responsibility for investigating and remediating petroleum contamination in the surrounding soil. After obtaining an environmental survey confirming that the soil in the vicinity of the tanks was contaminated, defendants refused to take remedial action or to permit DEC to do so. DEC installed observation wells on adjacent property that revealed no groundwater contamination.

In 2002, plaintiff commenced this action against defendants and the corporation seeking to recover its remediation costs on the ground that they are strictly liable for the petroleum discharge under Navigation Law article 12. Plaintiff moved for summary judgment on three of the five causes of action. Defendants and the corporation opposed the application. Supreme Court denied plaintiff's motion and, upon review of the record, dismissed the complaint. Plaintiff appeals.

Under Navigation Law article 12, commonly referred to as the Oil Spill Act, "[a]ny person who has discharged petroleum" is strictly liable for cleanup and remediation costs (Navigation Law § 181 [1]). A discharge is defined, in pertinent part, as "any intentional or unintentional action or omission" that results in the release of petroleum (Navigation Law § 172 [8]). Liberally construing these provisions, as we must (*see State of New York v Green*, 96 NY2d 403, 406 [2001]; *State of New York v Montayne*, 199 AD2d 674, 674-675 [1993]), we conclude that defendants are strictly liable as dischargers and, thus, Supreme Court erred in dismissing the complaint against them.

Defendants argue that they cannot be held liable because they did not cause the contamination, did not control the site when the contamination occurred, and had no knowledge of the existence of storage tanks or contamination on the property when they purchased it. However, strict liability under the Oil Spill Act does not depend on fault or knowledge (*see State of New York v Green*, 96 NY2d at 407). Instead, the liability of an otherwise faultless owner of contaminated property or a system from which petroleum has spilled "turns on the owner's 'capacity to take action to prevent an oil spill *or to clean up contamination resulting from a spill*' " (*State of New York v B & P Auto Serv. Ctr., Inc.*, 29 AD3d 1045, 1047 [2006], *lv dismissed* 7 NY3d 864 [2006] [emphasis added], quoting *State of New York v Speonk Fuel, Inc.*, 3 NY3d 720, 724 [2004]). When a spill is discovered, the owner or operator of the system from which the discharge occurred " 'is most likely to be in position to halt the discharge, to effect an immediate cleanup, or to prevent a discharge in the first place' " (*Matter of White v Regan*, 171 AD2d 197, 200-201 [1991], *lv denied* 79 NY2d 754 [1992], quoting *Quaker State Corp. v United States Coast Guard*, 681 F Supp 280, 285 [1988]). Accordingly, we have consistently held system owners strictly liable for the cost of remediation under Navigation Law § 181 (1) "even in the absence of any evidence that the owner caused or contributed to the discharge" (*State of New York v Dennin*, 17 AD3d 744, 745 [2005], *lv dismissed* 5 NY3d 824 [2005]; *see Golovach v Bellmont L.M.*, 4 AD3d 730, 731 [2004], *lv dismissed* 2 NY3d 793 [2004]; *Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d 549, 549 [2000], *lv denied* 96 NY2d 701 [2001]; *State of New York v Arthur L. Moon, Inc.*, 228 AD2d 826, 827 [1996], *lv dismissed* 89 NY2d 861 [1996]). We have also previously determined that owners of petroleum systems from which petroleum has spilled or leaked are "dischargers" within the purview of Navigation Law § 172 (8) even where, as here, the discharge occurred before their ownership began and the owners did not contribute to the discharges

or know that they had occurred (*see Matter of White v Regan*, 171 AD2d at 199).

Contrary to defendants' contention, our holding in *White* was unaffected by the subsequent determination of the Court of Appeals that a landlord whose property was contaminated by a spill from a kerosene tank owned by a tenant could not be held liable based solely on land ownership, but was liable as a discharger nonetheless because of its "failure, unintentional or otherwise, to take any action in controlling the events that led to the spill or to effect an immediate cleanup" (*State of New York v Green*, 96 NY2d at 407). The Court reasoned that imposing liability in this circumstance served to ensure that responsible parties were available to reimburse plaintiff for cleanup costs; to do otherwise "would discourage landowners from promptly cleaning up their contaminated land, leaving [plaintiff] to shoulder the entire cost of the cleanup while it searches for the party at fault" (*id.* at 407-408).*

Further, strict liability under the statute need not be premised on ownership of land or a petroleum system at the time a discharge occurs; instead, such liability may be founded either upon a potentially responsible party's capacity to prevent spills before they occur *or* the ability to clean up contamination thereafter (*see State of New York v Speonk Fuel, Inc.*, 3 NY3d at 724). Here, after defendants knew that the storage system on their property had discharged petroleum, that the property was contaminated and that a cleanup was needed, they did nothing. As owners of both the contaminated property and the system that caused the contamination, they are the parties best situated to effect the cleanup. To hold that they are not liable as dischargers simply because the spill occurred before they owned the system would be inconsistent with the statutory purpose of promoting prompt cleanups (*see id.* at 723; *State of New York v Green*, 96 NY2d at 406). Further, holding owners such as these liable is consistent with legislative policy, in view of the benefit derived from the cleanup efforts and the fact that their property is often the only asset available to plaintiff for recovery (*see State of New York v Green*, 96 NY2d at 408). Defendants here are not the mere victims of a " 'midnight dumper' or an errant oil truck that spills fuel" upon their property (*id.* at 407). Accordingly, we conclude that defendants are strictly liable as dischargers under the Oil Spill Act as a matter of law.

---

* A faultless landowner who has been found liable as a discharger is not without a remedy; the Oil Spill Act permits such a landowner to seek contribution from the party at fault (*see* Navigation Law § 181 [5]; *State of New York v Green*, 96 NY2d at 408; *White v Long*, 85 NY2d 564, 568 [1995]).

Finally, Supreme Court concluded that the corporation could not be held liable. Although plaintiff argues that Burth identified the corporation as the owner of the facility in the tank removal applications and later affirmed that he and Stasaitis acted on behalf of the corporation in obtaining the environmental survey, we find no evidence in the record that identifies the corporation as a discharger, as an owner of the premises or as an owner of any part of the system that failed. Accordingly, the complaint against the corporation was properly dismissed.

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted summary judgment dismissing the complaint against defendants Carlton J. Burth and James G. Stasaitis, Jr. and as denied plaintiff's motion for summary judgment as to said defendants; plaintiff's motion granted to that extent; and, as so modified, affirmed. [**Prior Case History: 22 Misc 3d 1130(A), 2009 NY Slip Op 50374(U).**]